IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Bobby Mosley, | Case No. 6:11-cv-1542-JMC-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Lt. Chrissie Cofield; Lt. Kenneth Richards, a/k/a Richards; Ricky Chastain, a/k/a Ricky Castin,[1] | |
| Defendants. | |

This matter is before the Court on (1) a motion for summary judgment filed by Plaintiff [Doc. 63]; (2) a motion for summary judgment filed by Defendant Lt. Kenneth Richards ("Richards") [Doc. 64]; (3) a motion for monetary damages filed by Plaintiff [Doc. 71]; (4) a motion for summary judgment filed by Defendant Lt. Chrissie Cofield ("Cofield") [Doc. 74]; and (5) a motion for hearing filed by Plaintiff [Doc. 78]. Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983, generally alleging a denial of due process and equal protection resulting from the alleged use of unnecessary deadly force by Richards and Cofield. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42,

---

[1] On September 1, 2011, Plaintiff's claims as to Defendant Ricky Chastain ("Chastain") were dismissed without prejudice and without issuance and service of process; as a result, Chastain was terminated as a party. [Doc. 36.] Thus, any reference to "Defendants" in this Report and Recommendation is to Defendants Lt. Chrissie Cofield and Lt. Kenneth Richards.

United States Code, Section 1983, and to submit findings and recommendations to the District Court.

## BACKGROUND

On November 27, 2008, an officer initiated a traffic stop of Plaintiff, who "took off" after the officer asked Plaintiff to step out of the vehicle. [Doc. 1-6 at 3.] Believing Plaintiff matched the description of an armed robbery suspect, the officer chased Plaintiff. [*Id.*] Plaintiff led multiple officers from the Laurens County Sheriff's Office and the Laurens City Police Department on a high speed chase. [*See id.* at 2–3.] Officers were able to set up a road block to attempt to stop Plaintiff; Richards and Cofield were at the road block. [*Id.* at 1–3.] As he approached the road block, Plaintiff did not slow down [*id.* at 1, 3] and drove toward Richards, who fired at Plaintiff [*id.* at 2]. Hearing shots, Cofield also fired on Plaintiff. [*Id.* at 1.] "[A]t the last possible second," Plaintiff swerved and avoided the road block. [*Id.* at 2–3.] After running off the road and into a ditch, Plaintiff escaped on foot but was later arrested. [*Id.* at 1, 3.]

Plaintiff contends his rights were violated by Richards and Cofield's use of deadly force. [Doc. 1.] He seeks monetary relief in the amount of $5,426.26 for the damage to his vehicle.[2] [Doc. 71 at 1.]

---

[2] Plaintiff originally sought various declaratory, injunctive, and monetary relief. [Doc. 1 at 4–5.] The District Court dismissed Plaintiff's claims for declaratory and injunctive relief [Doc. 36 at 3], and subsequently, Plaintiff indicated he "only wishes to seek relief for monetary damages that was sustained to his vehicle during this incident" [Doc. 71 at 1].

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

6

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Plaintiff contends Defendants' use of deadly force violated his Fourteenth Amendment rights to due process and equal protection. [Doc. 1 at 3.] However, liberally construing Plaintiff's Complaint, the Court finds the Complaint is best viewed as arguing Defendants' excessive use of force violated Plaintiff's Fourth Amendment rights.[3] [*See* Doc. 1; Doc. 63 at 2; Doc. 71 at 4.] Defendants contend they did not violate Plaintiff's Fourth Amendment rights because their actions were objectively reasonable under the

---

[3] Further, the Supreme Court has stated

> [w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. This much is clear from our decision in *Tennessee v. Garner*, [471 U.S. 1 (1985)]. In *Garner*, we addressed a claim that the use of deadly force to apprehend a fleeing suspect who did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights, notwithstanding the existence of probable cause to arrest. Though the complaint alleged violations of both the Fourth Amendment and the Due Process Clause, *see* 471 U.S., at 5, 105 S.Ct., at 1698, we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the "reasonableness" of a particular seizure depends not only on when it is made, but also on how it is carried out. *Id.*, at 7–8, 105 S.Ct., at 1699–1700. Today we make explicit what was implicit in *Garner*'s analysis, and hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Thus, Plaintiff's claim that Defendants improperly used deadly force against him during the course of his arrest is properly analyzed as a claim of a violation of his Fourth Amendment rights.

circumstances. [Doc. 64-1 at 4–9; Doc. 74-1 at 4–6.] Further, Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly established rights of which a reasonable government official would have known. [Doc. 64-1 at 9–13; Doc. 74-1 at 7–10.] The Court agrees Defendants are entitled to qualified immunity.

**Qualified Immunity Standard**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of

8

the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

**Excessive Force Standard**

Here, the Court has considered whether Plaintiff has alleged a deprivation of an actual constitutional right. A claim that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). In applying the objective reasonableness standard, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*,

99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396–97). Further, proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," and "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm," *Elliott*, 99 F.3d at 641; thus, police officers do not have "to wait until a suspect shoots to confirm that a serious threat of harm exists," *id.* at 643.

In several cases, the Fourth Circuit determined an officer's use of deadly force was objectively reasonable under the circumstances, preventing a successful excessive force claim. In *Slattery v. Rizzo*, reversing the district court's denial of an officer's motion for summary judgment based on qualified immunity, the court held a reasonable officer would have probable cause to believe using deadly force was lawful where the suspect refused orders to raise his hands, appeared to have one hand around an object out of the officer's sight, and turned toward the officer with that hand hidden from view. 939 F.2d 213, 216–17 (4th Cir. 1991). In *McLenagan v. Karnes*, again reversing the district court's denial of an officer's motion for summary judgment based on qualified immunity, the Fourth Circuit held a reasonable officer, possessing the same information as the officer who used deadly force, could have believed his conduct was lawful where the suspect was running toward the officer while another officer yelled "The man has got a gun!" and the officer could not

see whether the suspect had a gun in his hands. 27 F.3d 1002, 1007–08 (4th Cir. 1994). In *Elliott*, the court held the force used by the officers was objectively reasonable, where two officers together shot 22 times at an arrestee who, while sitting handcuffed in the passenger seat of a patrol car, pointed a small gun with his finger on the trigger at the officers standing outside the car. 99 F.3d at 645. Finally, in *Sigman v. Town of Chapel Hill*, the court affirmed summary judgment on the basis of qualified immunity to an officer who fired at a suspect the officer believed was coming toward him with a knife. 161 F.3d 782, 784 (4th Cir. 1998). The court summarized,

> On the record before us, it is undisputed that, at the moment that Sigman stepped out of the house, Officer Riddle had ample knowledge of Sigman's dangerousness. Riddle knew that Sigman had a knife and was enraged inside the house, cutting himself. He knew that Sigman had been drinking and throwing things. He knew that Sigman was willing to use his knife on others because Sigman had slashed at him through the window. He knew that Sigman had made threats on his life, on his fellow officers' lives, and on Donna Solomon's life. And he knew that Sigman had not previously responded to his requests to calm down or come out of the house. Furthermore, when Sigman emerged from the house, he did not obey the officers' commands. Rather, he took a number of steps towards Officer Riddle. Riddle, and all of the officers at the scene, perceived that Sigman was holding a knife as he moved forward towards Officer Riddle, and the crowd behind Riddle was "taunting [Sigman] to continue." It is undisputed that the atmosphere was volatile and threatening. These circumstances are exactly the kind that a qualified immunity analysis requires us to consider. *See Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865; *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996) ("The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection"). Faced with this tense and dangerous situation, we conclude that Officer Riddle reasonably perceived a threat to his safety and the safety of others and that his response therefore was objectively justified and reasonable.

*Id.* at 787.

**Analysis**

Cofield contends the following facts establish her actions were objectively reasonable under the circumstances:

> a) an armed robbery preceded the use of force; b) the victim of the armed robbery, the store clerk, informed the officers, including Defendant Cofield, that the suspect had a gun and pointed it the clerk; c) Plaintiff was stopped by an officer after his vehicle matched the description given by the store clerk; d) During the stop, Plaintiff fled the scene; e) Plaintiff led several officers on a high speed pursuit; f) Plaintiff, during the course of the pursuit, approached Defendant Cofield and Defendant Richards at a high speed; g) Defendant Cofield, from the store clerk, believed the Plaintiff was armed; h) Defendant Cofield thought she saw a gun in Plaintiff's hand;[4] and i) Defendant Cofield heard gunfire before firing at Plaintiff's vehicle.

[Doc. 74-1 at 5 (citing Doc. 74-2 (Cofield's affidavit)).] Likewise, Richards contends his actions were objective reasonable based on the following circumstances:

> the victim's statement indicating the plaintiff was armed, the plaintiff's desperate efforts to evade apprehension, the plaintiff's reckless driving, repeated refusal to comply with law enforcement orders, [and] the vehicle's abrupt turn and continued acceleration in Deputy Richards's direction.

[Doc. 64-1 at 8–9.] On the other hand, Plaintiff argues Defendants' actions were unjustifiable because no weapon was recovered from Plaintiff's vehicle or otherwise found in Plaintiff's possession before or at the time of his arrest [Doc. 63 at 2]; the officer who initiated the traffic stop lacked probable cause to stop Plaintiff [*see* Doc. 80-4 at 1; Doc. 80-

---

[4] In her affidavit, Cofield stated she responded to the gas station where the robbery had occurred, and the victim had informed the responding officers that the suspect pointed a black gun at the victim during the robbery. [Doc. 74-2 ¶ 5.] Cofield further averred that, as Plaintiff approached Defendants at a high speed, his arm hung out the window, and Cofield saw what she believed was a black gun in Plaintiff's hand. [*Id.* ¶ 10.] Finally, as to the "black gun," Cofield averred a search of Plaintiff's car revealed a Listerine bottle wrapped in black tape, which was believed to be the alleged gun Plaintiff used during the robbery. [*Id.* ¶ 13.]

12

6]; Plaintiff could not have been trying to run over Richards because Plaintiff swerved and ran off the side of the road, as stated in the police reports [Doc. 80-4 at 2; Doc. 80-8]; and the Listerine bottle found in Plaintiff's vehicle was not wrapped in black tape to resemble a weapon, and Plaintiff never held it in his hand [Doc. 80-3; Doc. 80-5].

Upon review, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendants, in shooting at Plaintiff, failed to act with objective reasonableness under the circumstances. Viewing the facts in the light most favorable to Plaintiff—that is, considering the facts Plaintiff does not challenge—the facts demonstrate that, at the time Defendants fired upon Plaintiff, Plaintiff was leading police on a high speed chase directly toward Richards. As the Supreme Court has stated, the standard is "reasonableness at the moment," *Graham*, 490 U.S. at 396, and applying the standard under these undisputed facts, a reasonable officer in the same circumstances—where a suspect was driving at a high rate of speed directly toward the officer or a fellow officer—would have concluded the suspect was threatening the officer's life, justifying the use of deadly force. Moreover, the Fourth Circuit precedents summarized above indicate it is objectively reasonable for an officer who believes he is threatened with deadly force to use deadly force against the threatening person, whether or not that person is actually threatening the officer with deadly force. Because Plaintiff has failed to produce evidence to the contrary, the Court concludes Defendants acted with objective reasonableness in firing upon Plaintiff, and therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends (1) Plaintiff's motion for summary judgment [Doc. 63] be DENIED; (2) Richards's motion for summary judgment [Doc. 64] be GRANTED; (3) Plaintiff's motion for monetary damages [Doc. 71] be DENIED; (4) Cofield's motion for summary judgment [Doc. 74] be GRANTED; and (5) Plaintiff's motion for hearing [Doc. 78] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 29, 2012
Greenville, South Carolina